958 F.2d 532
 ARAB AFRICAN INTERNATIONAL BANK, Appellant,
v.
Jonathan I. EPSTEIN, Richard S. Goldman, Goldman & Epstein,
Kendis & Baker, P.C., Sherman L. Kendis.
Sherman L. KENDIS, Cross-Claimant,
v.
Jonathan I. EPSTEIN, Richard S. Goldman, Goldman & Epstein,
Cross-Defendants.
Jonathan I. ESPTEIN, Richard S. Goldman, Goldman & Epstein,
Cross-Claimants,
v.
KENDIS & BAKER, P.C., Sherman L. Kendis, Cross-Defendants.
Sherman L. KENDIS, Cross-Claimant,
v.
Jonathan I. EPSTEIN, Richard S. Goldman, Goldman & Epstein,
Cross-Defendants.
 No. 91-5409.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 12, 1991.
Decided March 9, 1992.
 
 Merrill M. O'Brien (argued), Dollinger & Dollinger, Rochelle Park, N.J., for appellant.
 Robert W. McAndrew (argued), Lawrence J. Hurley, Voorhees & Acciavatti, Morristown, N.J., for appellees Jonathan I. Epstein, Richard S. Goldman, and Goldman & Epstein.
 Richard Williams, Mobile, Ala., for Sherman L. Kendis.
 Sherman L. Kendis, pro se.
 Before SLOVITER, Chief Judge, SCIRICA and ROTH, Circuit Judges.OPINION OF THE COURT
 SCIRICA, Circuit Judge.
 
 
 1
 In this legal malpractice action, the district court granted summary judgment for defendants on the ground of collateral estoppel.[1] We will reverse.
 
 I.
 
 2
 This case arises out of a mortgage loan from Appellant Arab African International Bank to Sencit S/G Development Company, upon which Sencit defaulted. The Bank, a foreign corporation chartered under the laws of Egypt, maintains a place of business in New York. Jonathan Epstein, Richard Goldman, and the law firm of Goldman & Epstein (Appellees) represented Sencit, a New Jersey partnership. On June 20, 1984, Sencit borrowed $3.25 million from the Bank. The loan documents initially provided that they would be executed in New Jersey and that New Jersey law would apply. These provisions were subsequently changed to designate New York as the state in which the documents were executed and whose law would apply, because the New Jersey Banking Act, 17:9A N.J.Stat.Ann. § 330 (West 1984), prohibited foreign banks from doing business in that state.
 
 
 3
 At the Bank's request, Goldman & Epstein issued an opinion letter signed by Epstein. The letter stated, in part:
 
 
 4
 [T]he Mortgage and Note ... constitute binding, and enforceable agreements of the Partnership in accordance with their terms (subject as to enforcement of remedies to applicable bankruptcy, reorganization, insolvency, moratorium or other laws or equitable principles affecting the enforcement of creditor's rights, generally from time to time in effect).
 
 
 5
 Since February 15, 1985, Sencit has failed to pay principal, interest, or real estate taxes. Under the terms of the Note, Sencit is indebted to the Bank in an amount exceeding $5 million.
 
 A.
 
 6
 In August 1985, the Bank initiated foreclosure proceedings in the Superior Court of New Jersey, Chancery Division. Sencit contested the foreclosure, and raised as a defense the New Jersey Banking Act, which provides:
 
 
 7
 A. A foreign bank shall not be entitled to maintain any action in any court of this State on any cause arising out of its transaction of business in this State in violation of the provisions of this article.
 
 
 8
 B. A foreign bank which violates any of the provisions of this article and its directors, officers, agents and employees who participate in any such violation shall be guilty of a misdemeanor.
 
 
 9
 17:9A N.J.Stat.Ann. § 330. The Bank contended that Sencit was estopped from raising the New Jersey Banking Act as a defense, because Sencit's attorney (Epstein) had represented in his opinion letter that the Note was "binding, and enforceable."
 
 
 10
 After a hearing on the New Jersey Banking Act issue, the Honorable Marvin N. Rimm held that Arab African International Bank was a foreign bank that had violated the Act and was precluded from maintaining its foreclosure action in a New Jersey court. In an oral opinion issued on May 5, 1986, Judge Rimm rejected the Bank's estoppel argument:
 
 
 11
 The Defendants are not estopped from asserting the defense [of the New Jersey Banking Act]. First of all, I find that the opinion of counsel was an opinion and nothing more, that the Plaintiff bank knew that it was an opinion and nothing more; that in addition to the opinion of counsel for the Defendants, the bank sought and obtained the opinion of its own attorney; and that more important than seeking the opinion of its own attorney, it proceeded with the matter in accordance with the opinion of its attorney that the execution of the documents in New York City constituted this a New York City transaction. I find that the Bank did not rely on the opinion of counsel for Sencit, that if it relied on any opinion, it relied on Mr. Kendis's [bank counsel's] opinion. More important, however, in terms of the question of estoppel, is the wording of the statute itself.... What the Plaintiff bank would have me do is ignore not only a penal but, in fact, a criminal act--a criminal statute of the State of New Jersey.... I cannot believe that a, the [sic] defense based on a penal statute cannot be asserted in a Court of this State, based on an alleged estoppel in any event.
 
 
 12
 Thus, although Judge Rimm felt the latter ground to be "more important," his decision not to apply estoppel clearly rested on alternative grounds: (1) lack of reliance on the Epstein opinion letter; and (2) inapplicability of estoppel to defenses based on penal statutes.
 
 
 13
 Based on his determination that the New Jersey Banking Act barred the Bank from maintaining its foreclosure action, Judge Rimm entered a Final Judgment and Order of dismissal on May 19, 1986. The Order specified that the dismissal would not affect Sencit's counterclaim. The Final Judgment and Order were not appealed.
 
 
 14
 Sencit then moved to amend its counterclaim to seek cancellation of the Note and Mortgage. In response, the Bank moved to amend its Answer to Sencit's counterclaim to assert its own counterclaim for foreclosure.
 
 
 15
 Judge Rimm orally denied the Bank's motion to amend its Answer to Sencit's counterclaim on December 5, 1986, and orally denied Sencit's motion to amend its counterclaim on March 6, 1987. He formally denied both motions by written Order dated June 22, 1987. Both parties appealed from the June 22, 1987 Order. On November 1, 1988, the Appellate Division of the Superior Court of New Jersey affirmed by per curiam opinion.
 
 B.
 
 16
 On June 19, 1990, the Bank filed this legal malpractice action in the United States District Court for the District of New Jersey, alleging fraud, material misrepresentation, and negligence on the part of attorneys Jonathan I. Epstein, Richard S. Goldman, Sherman L. Kendis, and the firms of Goldman & Epstein and Kendis & Baker, a professional corporation. Epstein, Goldman, and the firm of Goldman & Epstein moved for summary judgment, alleging among other grounds the doctrine of collateral estoppel, or issue preclusion.
 
 
 17
 The district court granted the motion, stating:
 
 
 18
 [T]his court finds that the reliance issue [an essential element of each of Appellant's legal malpractice claims] was raised and resolved in this case against the plaintiff in the proceedings in state court, and that as a matter of law collateral estoppel applies to prevent this action here against defendants Epstein, Goldman, and the firm of Epstein & Goldman [sic].[2]
 
 II.
 
 19
 Our review of the district court's grant of summary judgment on the ground of issue preclusion is plenary. All inferences to be drawn from the facts should be viewed in the light most favorable to the Bank. General Comm. of Adjustment, United Transp. Union v. CSX R.R. Corp., 893 F.2d 584, 589 (3d Cir.1990).
 
 
 20
 The issue presented here is whether the doctrine of issue preclusion bars the Bank from re-litigating the question of the Bank's reliance on Epstein's opinion letter. We apply New Jersey law. Peduto v. City of North Wildwood, 878 F.2d 725 (3d Cir.1989). New Jersey has adopted section 27 of the Restatement (Second) of Judgments on issue preclusion. Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 423, 591 A.2d 592 (1991).
 
 
 21
 Section 27 of the Restatement (Second) of Judgments provides, in part:
 
 
 22
 When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.
 
 
 23
 ....
 
 
 24
 i. Alternative determinations by court of first instance. If a judgment of a court of first instance is based on determination of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone.
 
 
 25
 ....
 
 
 26
 o. Effect of an appeal.... If the judgment of the court of first instance was based on a determination of two issues, either of which standing independently would be sufficient to support the result, and the appellate court upholds both of these determinations as sufficient, and accordingly affirms the judgment, the judgment is conclusive as to both determinations. In contrast to the case discussed in Comment i, the losing party has here obtained an appellate decision on the issue, and thus the balance weighs in favor of preclusion.
 
 
 27
 If the appellate court upholds one of these determinations as sufficient but not the other, and accordingly affirms the judgment, the judgment is conclusive as to the first determination.
 
 
 28
 If the appellate court upholds one of these determinations as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, the judgment is conclusive as to the first determination.
 
 
 29
 Restatement (Second) of Judgments § 27, cmts. i, o (1982).[3]
 
 
 30
 Here, Judge Rimm's refusal to apply the doctrine of estoppel to bar Sencit from asserting the New Jersey Banking Act as a defense to the Bank's foreclosure action was based on: (1) absence of reliance; and (2) unavailability of estoppel against enforcement of a penal statute. "Either of [these determinations] standing independently would be sufficient to support the result." See Restatement (Second) of Judgments § 27, cmts. i, o. Thus, the question whether issue preclusion applies here turns on whether Judge Rimm's determination of the absence of reliance was upheld on appeal. If so, issue preclusion bars re-litigation of the issue; if not, re-litigation is not barred.
 
 
 31
 Whether Judge Rimm's finding of non-reliance was upheld on appeal is not apparent from the opinion of the appellate court. As we have noted, Judge Rimm's oral opinion dismissing the Bank's foreclosure complaint, based in part on the alternative findings of non-reliance and inapplicability of estoppel to defenses based on penal statutes, was issued on May 5, 1986. Judge Rimm signed a Final Judgment and Order of dismissal on May 19, 1986. That dismissal was not appealed.
 
 
 32
 Subsequently, Sencit (represented by Epstein) moved to amend its counterclaim to seek cancellation of the Note and Mortgage. In response, the Bank moved to amend its Answer to Sencit's counterclaim to assert its own counterclaim for foreclosure. The Bank contended that the New Jersey Banking Act, which prohibited the Bank from maintaining "any action in any court of this State on any cause arising out of its transaction of business in this State in violation of the provisions of this article," 17:9A N.J.Stat.Ann. § 330, did not prohibit the Bank from maintaining a counterclaim. Judge Rimm orally denied the Bank's motion to amend its Answer to Sencit's counterclaim on December 5, 1986, and Sencit's motion to amend its counterclaim on March 6, 1987. He formally denied both motions by written Order dated June 22, 1987. Both parties appealed the June 22, 1987 Order to the Appellate Division of the Superior Court of New Jersey.
 
 
 33
 The Appellate Division affirmed Judge Rimm's denial of both motions. The per curiam opinion issued by the Appellate Division on November 1, 1988, stated, in its entirety:
 
 
 34
 Defendant, Sencit F/G Development Company, a New Jersey Partnership, appeals from the trial judge's final order of June 22, 1987 denying its counterclaim for discharge and cancellation of the mortgage and note underlying its transaction with the plaintiff, Arab African International Bank. Plaintiff cross-appeals from the order of June 22, 1987 denying its motion to assert a counterclaim for foreclosure against defendant.
 
 
 35
 The trial judge correctly concluded that plaintiff, a foreign bank which transacted business in New Jersey in violation of our laws, was barred by N.J.S.A. 17:9A-330 from maintaining any action either by way of complaint or counterclaim in connection with the illicit transaction. Likewise, he was correct in concluding that he was under no statutory obligation to discharge the mortgage and note and that given defendants' participation in the proscribed transaction, that there was neither an equitable basis nor a public policy reason for him to do so. We affirm substantially for the reasons expressed by Judge Rimm in his oral opinions of May 5, 1986, December 5, 1986, and March 6, 1987.[4]
 
 
 36
 The key question is whether the Appellate Division's reference to Judge Rimm's never-appealed decision of May 5, 1986 falls within the ambit of the following language from the Restatement:
 
 
 37
 If the judgment of the court of first instance was based on a determination of two issues, either of which standing independently would be sufficient to support the result, and the appellate court upholds both of these determinations as sufficient, and accordingly affirms the judgment, the judgment is conclusive as to both determinations.
 
 
 38
 Restatement (Second) of Judgments § 27 cmt. o.
 
 
 39
 The Appellate Division affirmed "substantially for the reasons" set forth in Judge Rimm's three oral opinions. From this language, we cannot discern whether the Appellate Division actually considered the alternative bases for Judge Rimm's rejection of the Bank's estoppel argument.
 
 
 40
 In order to ascertain the reasoning behind the opinion of the Appellate Division, we have examined the briefs of the parties on appeal to that court.[5] Our review has led us to conclude that the question of the Bank's reliance on the Epstein opinion letter was neither presented to nor decided by the Appellate Division.
 
 
 41
 The parties agree that the decisions appealed to the Appellate Division were Judge Rimm's oral decisions of December 5, 1986 and March 6, 1987, as embodied in his written Order of June 22, 1987. Judge Rimm's oral decision of May 5, 1986, as embodied in his Final Judgment and Order of May 19, 1986 dismissing the Bank's foreclosure action, was not appealed.[6] See Brief on Behalf of Plaintiff-Respondent-Cross-Appellant, Arab African International Bank at 7; Brief on Behalf of Defendant-Appellant, Sencit F/G Development Company at 2, 4.
 
 
 42
 Furthermore, neither of the findings underlying Judge Rimm's rejection of the Bank's estoppel argument--non-reliance on the Epstein opinion letter and unavailability of estoppel against defenses based on a penal statute--was contested in the Appellate Division. Instead, the briefs of the parties before the Appellate Division accepted Judge Rimm's determination that the New Jersey Banking Act prevented the Bank from prosecuting a foreclosure complaint in the courts of New Jersey; the parties disagreed only as to whether the Act required cancellation of the Note and Mortgage, and as to the Bank's ability to maintain a counterclaim for foreclosure.[7] Neither Judge Rimm's rejection of the Bank's estoppel argument nor the alternative bases for that rejection were contested in the Appellate Division briefs. Of course, if the issue of reliance was never the subject of an appeal, there could be no preclusion, because an alternative holding by a court of first instance "is not conclusive with respect to either issue standing alone." Restatement (Second) of Judgments § 27, cmt. i.
 
 
 43
 Thus, we conclude that the Bank has not "obtained an appellate decision on the [reliance] issue," and that under New Jersey law, re-litigation of the issue is not barred by the doctrine of issue preclusion. Restatement (Second) of Judgments § 27, cmts. i, o; see In re Real Estate Title and Settlement Servs. Antitrust Litig., 869 F.2d 760, 764 n. 1 (3d Cir.1989) (citing Restatement (Second) of Judgments § 27 (Unless resolution of claims was essential to affirmance on appeal, issue preclusion will not bar re-litigation of those issues.).
 
 III.
 
 44
 Because we hold that the district court erred in concluding that the doctrine of issue preclusion barred the Bank from re-litigating the reliance issue, we will reverse and remand for further proceedings consistent with this opinion.
 
 
 
 [1]
 "Issue preclusion now substitutes for 'collateral estoppel.' " Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir.1988). As Judge Weis noted in Gregory, both the Supreme Court and the Second Restatement of Judgments use the term "issue preclusion." Id. at 115-16 (citing Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984))
 
 
 [2]
 Based on its April 1, 1991 Opinion, the district court entered an order granting Appellees' motion for summary judgment on April 2, 1991. An amended order was entered on April 17, 1991. The Bank filed its notice of appeal on May 14, 1991. On June 14, 1991, the district court ordered "that the Amended Order of this Court signed on April 16, 1991 and entered on April 17, 1991, be and hereby is entered as a Final Judgment pursuant to F.R.C.P. 54(b) because there is no just reason for delay."
 Appellees contest appellate jurisdiction on the ground that the order appealed from is interlocutory. Given the district court's June 14, 1991 Order, Appellees' contentions are without merit. See In re Paoli R.R. Yard PCB Litigation, 916 F.2d 829, 837 n. 6 (3d Cir.1990).
 
 
 [3]
 Comment i to section 27 of the Restatement (Second) takes a position contrary to that espoused by the first Restatement. See Restatement of Judgments, § 68 cmt. n (1942) ("Alternative grounds. Where the judgment is based upon the matters litigated as alternative grounds, the judgment is determinative on both grounds, although either alone would have been sufficient to support the judgment."). In adopting its new position, the Restatement (Second) relied heavily upon the reasoning of the United States Court of Appeals for the Second Circuit in Halpern v. Schwartz, 426 F.2d 102 (2d Cir.1970), which it found "highly persuasive." Restatement (Second) of Judgments, § 27 cmt. i, Reporter's Note. New Jersey has adopted the Restatement (Second) approach, and we must apply New Jersey law
 
 
 [4]
 Judge Rimm's oral opinions of December 5, 1986 and March 6, 1987 do not mention the reliance issue. Joint Appendix at 650-53, 599-609. The Order of June 22, 1987 that was appealed to the Appellate Division encompasses these two oral opinions
 
 
 [5]
 Those briefs were filed in this court on January 10, 1992, as a supplement to the record on appeal. Had we been able to determine the issue from the appellate court opinion, we need not have inquired beyond the text of that decision
 
 
 [6]
 In light of this fact, it is at least arguable that Judge Rimm's alternative findings of non-reliance and unavailability of estoppel against defenses based on a penal statute could not be upheld on appeal within the meaning of comment o to section 27 of the Restatement (Second) of Judgments, supra. However, given our conclusions regarding the basis of the decision of the Appellate Division, we need not decide this question
 
 
 [7]
 Throughout its Appellate Division brief, the Bank conceded the applicability of the New Jersey Banking Act. See Brief on Behalf of Plaintiff-Respondent-Cross-Appellant at 8-37 ("Argument" ) (N.J.Super.Ct.App.Div.1988) (No. A-5675-86T8). Nowhere in that brief did the Bank renew its contention that Sencit should be estopped from raising the Act as a defense, nor did the Bank challenge Judge Rimm's finding of non-reliance. The Bank argued only that the Act did not require discharge of the Mortgage, and that the Act should be read to permit the Bank to assert a counterclaim for foreclosure
 Sencit, which had raised the New Jersey Banking Act defense in the first place, had no reason to challenge the applicability of the Act, nor did it do so. Instead, Sencit contended that the Bank's violation of the Act mandated that the Mortgage be discharged. Brief on Behalf of Defendant-Appellant, Sencit F/G Development Company at 7-27 ("Argument" ) (N.J.Super.Ct.App.Div.1988) (No. A-5675-86T8).