

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-14-2006

# Jean Alexander v. L'Oreal USA Inc

Precedential or Non-Precedential: Precedential

Docket No. 05-4321

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Jean Alexander v. L'Oreal USA Inc" (2006). *2006 Decisions.* Paper 524.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/524

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-4321

JEAN ALEXANDER COSMETICS, INC.,
Appellant

v.

L'OREAL USA, INC.;
REDKIN 5TH AVENUE, N.Y.C.

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 04-cv-00975)
District Judge: Honorable Terrence F. McVerry

Argued June 12, 2006
Before: RENDELL and VAN ANTWERPEN,  <u>Circuit
Judges</u>,
and ACKERMAN*, <u>District</u> <u>Judge</u>.

* Honorable Harold A. Ackerman, Senior District Judge for
the District of New Jersey, sitting by designation.

(Filed August 14, 2006)

James Cirilano    **[ARGUED]**
Jennifer M. Haven
Cirilano & Associates
722 Broadway Avenue
McKees Rocks, PA 15136
    *Counsel for Appellant*

Robert L. Sherman    **[ARGUED]**
Paul, Hastings, Janofsky & Walker
75 East 55th Street
New York, NY 10022
    *Counsel for Appellees*

OPINION OF THE COURT

RENDELL, Circuit Judge.

In proceedings before the Trademark Trial and Appeal Board ("TTAB" or "Board"), the predecessor in interest of L'Oreal USA, Inc. ("L'Oreal") argued that a registered trademark used by Jean Alexander Cosmetics, Inc. ("Jean Alexander") was likely to be confused with two of its marks and that the registration should therefore be cancelled. The TTAB denied the petition to cancel, holding, among other things, that there was no likelihood of confusion as between the marks. In the instant action for trademark infringement, Jean Alexander

seeks to revisit the Board's finding with respect to likelihood of confusion.

The District Court held that Jean Alexander was precluded from relitigating the TTAB's determination that there was no likelihood of confusion, and we agree. The issue was actually litigated and previously decided in the cancellation proceedings. Although the TTAB's conclusion on likelihood of confusion was not its only basis for denying the cancellation petition, it was one of two independently sufficient grounds on which the Board resolved the case. Under these circumstances, we will apply the doctrine of issue preclusion and affirm the District Court's dismissal of Jean Alexander's complaint.

I.

Sometime in 1988, L'Oreal's predecessor in interest began using the mark "Shades EQ" and associated design for certain hair care products.[1] In 1990, Jean Alexander began using its "EQ System" mark and design and, in 1993, it registered this mark with the Patent and Trademark Office ("PTO"). In 1996, L'Oreal attempted to register a modernized version of its Shades EQ mark that it had begun using in 1992. The examiner at the PTO rejected the application for registration of the modernized Shades EQ mark because it was likely to be confused with Jean Alexander's EQ System mark. All three marks are reproduced as an appendix to this opinion.

_____

[1]For the sake of convenience, we will refer to L'Oreal's predecessor in interest simply as L'Oreal.

After the PTO rejected L'Oreal's application to register its mark, L'Oreal filed a petition to cancel Jean Alexander's registration for the EQ System mark. L'Oreal alleged that it had used its original Shades EQ mark prior to Jean Alexander's use of the EQ System mark and that, if there was a likelihood of confusion between the two marks, Jean Alexander's registration should be cancelled. In addition, L'Oreal alleged that the original and modernized versions of its Shades EQ mark were "legal equivalents" and that it could therefore tack the date of first use of the original version of the mark onto the modernized version, giving the modernized version priority over Jean Alexander's EQ System mark as well.

In its answer to L'Oreal's petition to cancel, Jean Alexander denied that L'Oreal's marks had priority over its trademark or that there was a likelihood of confusion between its EQ System mark and L'Oreal's Shades EQ marks. It also raised the latter claim as an affirmative defense.

During more than four years of proceedings, the parties created an extensive record that included depositions and trial testimony of several of the parties' executives. On June 28, 2001, the TTAB dismissed L'Oreal's petition to cancel the registration of Jean Alexander's EQ System trademark. The TTAB held that the original Shades EQ mark had priority over the EQ System mark, but found that the modernized Shades EQ mark was not a legal equivalent of the original version. Consequently, L'Oreal could not establish the priority of its modernized Shades EQ mark over Jean Alexander's EQ System mark.

4

Having resolved the question of priority, the TTAB examined likelihood of confusion. Because L'Oreal's original Shades EQ mark had priority over Jean Alexander's EQ System mark, it was necessary for the Board to determine whether there was a likelihood of confusion between these two marks. However, "solely for the sake of completeness," the TTAB also considered the likelihood of confusion between the EQ System mark and the modernized Shades EQ mark. The TTAB did this "in case upon further review, it is determined that [L'Oreal's] original and modernized marks are legal equivalents," a finding that would give the modernized version priority over the EQ System mark. (App. 79a.)

The Board concluded that there was no likelihood of confusion between Jean Alexander's mark and either the original or modernized versions of L'Oreal's mark. In addition to noting the basic differences between the marks, the TTAB relied on (1) testimony from L'Oreal's assistant vice president for marketing to the effect that there was "some possibility of confusion," but not a likelihood, (2) testimony from L'Oreal's former senior vice president of marketing and advertising that there was no likelihood that the modernized Shades EQ mark would be confused with the EQ System mark, (3) testimony from Jean Alexander's chief executive officer that the public was not likely to be confused by the marks, and (4) the fact that neither party offered evidence of any instances of actual confusion. Taken as a whole, this evidence convinced the Board that there was no likelihood of confusion.

Instead of appealing the TTAB's decision in the cancellation action, L'Oreal reasserted its request with the PTO

to register its modernized Shades EQ trademark. Relying on the TTAB's finding that there was no likelihood of confusion between the modernized Shades EQ mark and the EQ System mark, the PTO withdrew its refusal to register L'Oreal's mark. The modernized Shades EQ mark was approved for publication in the *Official Gazette* on October 10, 2002, which entitled third parties to oppose its registration. *See* 15 U.S.C. § 1063.

Jean Alexander timely filed a notice of opposition to the registration of the modernized Shades EQ mark, arguing that it would likely be confused with the EQ System mark. The TTAB held that the likelihood of confusion between the two marks had been fully and decisively litigated in the cancellation proceedings. It noted that

> the Board made detailed and specific findings in its determination of both priority and likelihood of confusion, and the determination of no likelihood of confusion in the market place was necessary to the final judgment. This is not a case where the Board made incidental determinations on an issue which was not before it. The issue of likelihood of confusion was the focus of the parties' pleadings and was fully litigated before the Board.

(App. 63a.) Because Jean Alexander was precluded from

6

relitigating likelihood of confusion, the TTAB granted summary judgment in favor of L'Oreal.

Thereafter, Jean Alexander filed a complaint against L'Oreal in the District Court alleging trademark infringement of its EQ System mark and specifically averring likelihood of confusion. The District Court dismissed the complaint, holding that the doctrine of issue preclusion, also known as collateral estoppel, prevented Jean Alexander from relitigating likelihood of confusion and foreclosed its claim for trademark infringement. Jean Alexander timely appealed. The District Court had subject matter jurisdiction under 28 U.S.C. § 1338 and we have appellate jurisdiction under 28 U.S.C. § 1291.

II.

Before turning to the merits, we must first determine the proper standard of review. We note that "different panels of our Court have applied different standards of review where collateral estoppel is in issue." *Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 288 F.3d 519, 524-25 (3d Cir. 2002); *see also Witkowski v. Welch*, 173 F.3d 192, 198 n.7 (3d Cir. 1999). In some cases we have reviewed the application or nonapplication of issue preclusion for abuse of discretion, while in others we have applied plenary review. *Compare Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995) (reviewing district court's decision to apply collateral estoppel for abuse of discretion), *Temple University v. White*, 941 F.2d 201, 212 n.16 (3d Cir. 1991) (same), *and McLendon v. Continental Can Co.*, 908 F.2d 1171, 1177 (3d Cir. 1990) (same), *with Szehinskyj v. Att'y Gen. of the United States*, 432

F.3d 253, 255 (3d Cir. 2005) (applying plenary review to application of issue preclusion), *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 547 (3d Cir. 1996) (same), *and Arab African Int'l Bank v. Epstein*, 958 F.2d 532, 534 (3d Cir. 1992) (same). We have not offered a clear rationale for adopting one standard of review over another.

These cases can be reconciled. The general rule is that we exercise plenary review over the application of issue preclusion. *See Szehinskyj*, 432 F.3d at 255 (applying plenary review to application of *mutual* offensive collateral estoppel); *Delaware River Port Authority v. Fraternal Order of Police*, 290 F.3d 567, 572 (3d Cir. 2002) (exercising plenary review over decision of whether to apply defensive collateral estoppel); *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999) (same); *Dici*, 91 F.3d at 547 (same); *Arab African Int'l Bank*, 958 F.2d at 534 (same). The only cases in which we have reviewed for abuse of discretion are those in which a nonparty to a previous proceeding has asserted issue preclusion against a defendant, that is, in cases involving "non-mutual offensive collateral estoppel." *See Smith v. Holtz*, 210 F.3d 186, 199 n.18 (3d Cir. 2000) (reviewing use of non-mutual offensive collateral estoppel under an abuse of discretion standard); *Raytech Corp.*, 54 F.3d at 190 (same); *Temple University*, 941 F.2d at 212 & n.16 (same); *McLendon*, 908 F.2d at 1177 (same).[2]

_____

[2]There are also instances in which we have specifically declined to decide the proper standard of review and simply applied plenary review because the result would have been the same under either abuse of discretion review or the more

8

Applying different standards of review in these different settings makes sense.  The predominant question in preclusion cases involving defensive or mutual collateral estoppel is whether the basic requirements for issue preclusion are satisfied.  *See Nat'l R.R. Passenger Corp.*, 288 F.3d at 525 (noting that the equitable exceptions to issue preclusion depend on mutuality of estoppel and whether estoppel is being asserted offensively or defensively).  This is a matter of law over which we exercise plenary review.  *See Szehinskyj*, 432 F.3d at 255 ("Application of collateral estoppel is a question of law . . . ."); *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999) ("Whether collateral estoppel . . . is available to a litigant is a question of law that we review *de novo*."); *Sandberg v. Virginia Bankshares, Inc.*, 979 F.2d 332, 344 (4th Cir. 1993) (reviewing the satisfaction of the basic requirements for issue preclusion de novo); *United States v. Sandoz Pharms. Corp.*, 894 F.2d 825, 826 (6th Cir. 1990) (same); *Balbirer v. Austin*, 790 F.2d 1524, 1526 (11th Cir. 1986) ("[T]his court exercises plenary review over the rules governing collateral estoppel.").

By contrast, the application of non-mutual offensive collateral estoppel presents a unique potential for unfairness because a defendant may have had little incentive to defend the first action vigorously, "particularly if future suits [were] not foreseeable," the judgment relied upon may have been inconsistent with one or more previous judgments in favor of

---

exacting plenary standard.  *See Nat'l R.R. Passenger Corp.*, 288 F.3d at 524-25; *Witkowski*, 173 F.3d at 198 n.7.

9

the defendant, or the second action may "afford[] the defendant procedural opportunities unavailable in the first action that could readily cause a different result." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 330-31 (1979). Moreover, the use of non-mutual offensive collateral estoppel "does not promote judicial economy in the same manner as defensive use does" because it creates an incentive for plaintiffs "to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment." *Id.* at 329-30. To address these problems, the Supreme Court concluded that trial courts should have broad discretion to determine when to apply non-mutual offensive collateral estoppel. *Id.* at 331. Thus, it is undoubtedly appropriate to review for abuse of discretion in such cases.

The instant case involves a defensive assertion of collateral estoppel by a party to the original TTAB proceeding. Accordingly, we will exercise plenary review over the District Court's decision to apply issue preclusion.

III.

The Second Restatement of Judgments articulates the general rule of issue preclusion as follows: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982). "We have consistently applied this general rule," *Nat'l R.R. Passenger Corp.*, 288 F.3d at 525, though our decisions have

10

employed slight variations on the basic requirements embodied in the Restatement. *Compare id., with Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001), *and Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 169 (3d Cir. 1999).

We have identified four standard requirements for the application of collateral estoppel in our case law: "'(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action.'" *Henglein*, 260 F.3d at 209 (quoting *Raytech Corp.*, 54 F.3d at 190); *see also Szehinskyj*, 432 F.3d at 255; *Hawksbill Sea Turtle v. Federal Emergency Management Agency*, 126 F.3d 461, 475 (1997). We have also considered whether the party being precluded "had a full and fair opportunity to litigate the issue in question in the prior action," *Seborowski*, 188 F.3d at 169, and whether the issue was determined by a final and valid judgment, *Nat'l R.R. Passenger Corp.*, 288 F.3d at 525.

The dispute in this case centers on whether the TTAB's finding on likelihood of confusion was "necessary" to its decision in the cancellation proceedings. Jean Alexander argues that once the Board concluded that the EQ System mark had priority over the modernized Shades EQ mark, there was no reason for it to analyze likelihood of confusion as to these two marks. To resolve the case at that point, the TTAB needed only to consider whether the *original* Shades EQ mark, which had

11

priority, was likely to be confused with the EQ System mark.[3] Thus, Jean Alexander contends that the Board's determination that there was no likelihood of confusion as between the EQ System mark and the modernized Shades EQ mark was unnecessary to its 2001 decision and should not be given preclusive effect.

L'Oreal argues that collateral estoppel applies here because both priority of use and likelihood of confusion figured prominently in the cancellation proceedings and both issues were potentially dispositive of the case. L'Oreal urges us to adopt a rule under which preclusive effect is given to a finding that is an alternative ground for a judgment where that finding, standing alone, would have been sufficient to support the judgment. Though an alternative finding may not be strictly necessary to the judgment in the sense that there was another stated basis for the decision, L'Oreal contends that giving such a finding preclusive effect would not compromise the objectives behind the necessity principle.

The requirement that a preclusive finding must have been necessary to a judgment is rooted in principles of fairness.

_____

[3]Had the Board concluded that the original and modernized Shades EQ marks were legal equivalents, it could have tacked the date of first use of the original version onto the modernized version. This would have given the modernized version priority over the EQ System mark and forced the Board to address whether there was a likelihood of confusion between the EQ System mark and the modernized Shades EQ mark.

12

"[P]arties should be estopped only on issues they actually deem important, and not on incidental matters." *Lynne Carol Fashions, Inc. v. Cranston Print Works Co.*, 453 F.2d 1177, 1183 (3d Cir. 1972). Because litigants are likely to view an issue that is necessary to the resolution of a case as important and to litigate it vigorously, it is fair to give such a determination preclusive effect. *See Wickham Contracting Co., Inc. v. Bd. of Educ. of City of New York*, 715 F.2d 21, 28 (2d Cir. 1983) (noting that the necessity rule ensures that "parties to litigation have sufficient notice and incentive to litigate matters in earlier proceedings which may bind them in subsequent matters"). The necessity requirement also ensures that preclusive effect is not given to determinations that did not "receive close judicial attention," *Commercial Assocs. v. Tilcon Gammino, Inc.*, 998 F.2d 1092, 1097 (1st Cir. 1993), or that were unappealable by virtue of being incidental to a decision, *see* Restatement (Second) of Judgments § 27 cmt. h. *See also Pettaway v. Plummer*, 943 F.2d 1041, 1044 (9th Cir. 1991) ("The primary purpose of the rule that prior resolution of an issue will have collateral estoppel effect only if it was necessarily decided is to ensure that the finder of fact in the first case took sufficient care in determining the issue."); *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1168 (5th Cir. Dec. 1981) ("[A]n immaterial issue may not have been afforded the same careful deliberation and analysis as an issue necessary to the judgment . . . . [and] a decision on an immaterial issue provides the losing party with no incentive to contest an erroneous decision by appeal."); 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4421, p.539 (2d ed. 2002) (recounting these "[t]wo common explanations" for the necessity requirement).

13

There is no question that likelihood of confusion was a central issue in the cancellation proceedings. It was the focus of the parties' pleadings and had been litigated extensively over the course of four years. Reviewing its own decision from 2001, the TTAB noted that this was "not a case where the Board made incidental determinations on an issue which was not before it." (App. 63a.) Rather, the TTAB believed that likelihood of confusion was an important issue in the case and, in fact, intended its determination that there was no likelihood of confusion to be controlling if its holding on priority were overturned on appeal. Thus, L'Oreal is correct that the finding on likelihood of confusion constituted an alternative ground on which the Board dismissed its petition to cancel.

However, this conclusion does not resolve the question of whether the finding should be given preclusive effect because, as Jean Alexander notes, the case could have been resolved without the Board's determination that there was no likelihood of confusion between the EQ System mark and the modernized Shades EQ mark. We must determine whether a finding that is an alternate, but independently sufficient, basis for a judgment should be deemed necessary to a decision for purposes of collateral estoppel.

"Traditional analysis has viewed [alternative holdings] as presenting a dilemma between two choices – preclusion must be available as to each of the independently sufficient findings, or it must be denied as to all." Wright et al., *supra*, at § 4421, p.564. Courts that apply collateral estoppel to alternative findings have sidestepped the requirement that the determination be "necessary" to the decision and focused

14

instead on the trustworthiness and practical considerations surrounding the adjudication. Those courts that deny preclusion to independently sufficient findings do so because an alternative holding, by definition, is not "necessary" to a judgment.

The First Restatement of Judgments resolved this dilemma in favor of extending preclusion to each alternative holding. *See* Restatement of Judgments § 68 cmt. n (1942) ("Where the judgment is based upon the matters litigated as alternative grounds, the judgment is determinative on both grounds, although either alone would have been sufficient to support the judgment."). The Second Restatement, crafted forty years later, adopted the contrary position. It states that "[i]f a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." Restatement (Second) of Judgments § 27 cmt. i.

There is no consensus among the courts of appeals as to whether the First or Second Restatement offers the better approach. The Courts of Appeals for the Second, Seventh, Ninth, and Eleventh Circuits generally give preclusive effect to alternative findings. *See Magnus Elecs., Inc. v. La Republica Argentina*, 830 F.2d 1396, 1402 (7th Cir. 1987) (holding that there is "no adequate reason not to apply" the position of the First Restatement); *Schellong v. INS*, 805 F.2d 655, 658-59 (7th Cir. 1986) ("[A] judgment which is based on alternative grounds is an effective adjudication as to both and is collaterally conclusive as to both."); *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 45 (2d Cir. 1986) ("The general rule in this Circuit is that 'if

15

a court decides a case on two grounds, each is a good estoppel.'" (quoting *Irving Nat'l Bank v. Law*, 10 F.2d 721, 724 (2d Cir. 1926))); *DeWeese v. Town of Palm Beach*, 688 F.2d 731, 734 (11th Cir. 1982) ("Normally, each alternative basis would form an independent ground for collateral estoppel . . . . In this case, however, the existence of alternative grounds makes the application of *offensive* collateral estoppel problematic." (emphasis added)); *In re Westgate-California Corp.*, 642 F.2d 1174, 1176-77 (9th Cir. 1981) (following "established rule" that preclusion apples to each adjudicated issue necessary to support any of the grounds upon which a judgment rests).[4]

---

[4]The Second Restatement relied heavily on the reasoning of *Halpern v. Schwartz*, 426 F.2d 102 (2d Cir. 1970) in articulating its position on independently sufficient alternative findings. *See* Restatement (Second) of Judgments § 27 reporter's note ("[T]he reasoning of the [*Halpern*] court is highly persuasive and is adopted as the basis of [Comment i] . . . ."). However, even before the Second Restatement had been completed, the Court of Appeals for the Second Circuit noted that *Halpern* was limited to its facts and that the decision was "not intended to have . . . broad impact outside the specific context" in which *Halpern* arose, namely, bankruptcy proceedings. *Winters v. Lavine*, 574 F.2d 46, 67 (2d Cir. 1978); *see also Williams v. Ward*, 556 F.2d 1143, 1154 (2d Cir. 1977). Thus, in the Second Circuit, the view of the First Restatement still controls "in circumstances divergent from those in *Halpern*." *Winters*, 574 F.2d at 67.

16

By contrast, the Courts of Appeals for the Tenth and Federal Circuits have refused to give preclusive effect to alternative findings that were each independently sufficient to support a judgment. *See Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1538-39 (Fed. Cir. 1995) (holding that a finding was not essential to a judgment for collateral estoppel purposes where judgment was supportable on other grounds); *Turney v. O'Toole*, 898 F.2d 1470, 1472 n.1 (10th Cir. 1990) (following Restatement (Second) of Judgments § 27 cmt. i). The Fifth Circuit Court of Appeals, though explicitly declining to decide whether to adopt the Second Restatement's rule in all cases, has discussed the rule with approval and applied it in the context of non-mutual offensive collateral estoppel. *Hicks*, 662 F.2d at 1169-70, 1173. Similarly, opinions of the Fourth Circuit Court of Appeals reflect a preference for the Second Restatement position, though the Court has not been entirely consistent on the issue. *Compare Tuttle v. Arlington County Sch. Bd.*, 195 F.3d 698, 704 (4th Cir. 1999) (declining to apply collateral estoppel to alternative finding of prior court), *with Ritter v. Mount St. Mary's College*, 814 F.2d 986, 993-94 (4th Cir. 1987) (noting "general rule" that alternative findings are not given preclusive effect, but nonetheless applying collateral estoppel to an alternative ground for a judgment that was fully litigated).

Our Court has not staked out a definitive position as to whether the doctrine of issue preclusion should apply to an independently sufficient alternative finding, or how the necessity requirement figures into this situation. In a case where we were applying New Jersey law, which follows section 27 of the Second Restatement, we permitted the parties to

17

relitigate an alternative holding of a state court that had not been reviewed on appeal. *See Arab African Int'l Bank*, 958 F.2d at 537 (citing Restatement (Second) of Judgments § 27 cmts. i, o). However, we gave no indication of whether we would adopt this approach ourselves in a case that involved only federal law.

In another case, *Hawksbill Sea Turtle v. Federal Emergency Management Agency*, the plaintiffs argued that collateral estoppel was inappropriate because "any findings made with respect to [the issue in question] were part of an alternative holding, and therefore not necessary to the prior ruling." 126 F.3d at 473-74. In the prior case between the parties, the district court had held that it lacked the power to hear the plaintiffs' claims and, alternatively, that these claims were meritless. *Id.* at 475. We held that applying issue preclusion to the substantive findings was improper because, once a court determines that it lacks jurisdiction to hear a plaintiffs' claims, "any findings made with respect to the merit of those claims are not essential to the judgment and cannot support the application of collateral estoppel." *Id.*

*Hawksbill Sea Turtle* stands for the proposition that "[a] court that admits its own lack of power to decide should not undertake to bind a court that does have power to decide." Wright et al., *supra*, at § 4421, p.576-78; *see also Gulla v. North Strabane Twp.*, 146 F.3d 168, 173 (3d Cir. 1998) (declining to give preclusive effect to findings that both deny court's power to decide the merits and express a view on the merits); *Stebbins v. Keystone Ins. Co.*, 481 F.2d 501, 508 (D.C. Cir. 1973) (holding that collateral estoppel is not applicable to

finding against plaintiff on merits where court also held that plaintiff lacked standing).  This principle is more narrow than the Second Restatement's rule that an alternative finding should never be given preclusive effect.  Here, both of the TTAB's alternative holdings related to the merits of the cancellation action, and there was no doubt as to the Board's power to rule on both.  Consequently, *Hawksbill Sea Turtle* does not control.

Finally, in *Henglein v. Colt Industries Operating Corp.*, we gave a court's alternative findings preclusive effect in a subsequent proceeding between the same parties.  However, the findings had originally been made in the context of a declaratory judgment action and we noted in our issue preclusion analysis that the necessity requirement for collateral estoppel "has diminished importance in the declaratory judgment setting." *Henglein*, 260 F.3d at 212.  "'Since the very purpose of declaratory relief is to achieve a final and reliable determination of legal issues, there should be no quibbling about the necessity principle.'" *Id.* (quoting Wright et al., *supra*, at § 4421, p.581).  Consequently, though we held that collateral estoppel should apply to all issues that the parties have litigated and a court has resolved in a declaratory action, we did not comment on how this principle applies beyond the context of declaratory judgments. Nonetheless, we were willing to look beyond the necessity requirement based on the nature of the proceeding.

Thus, the cases in which we have considered whether to give preclusive effect to independently sufficient alternative findings are all distinguishable from the instant case. We have never chosen between the positions of the First or Second

19

Restatement under the circumstances before us. We will accordingly turn to the arguments in support of each approach.

Applying issue preclusion to independently sufficient alternative findings furthers the basic objectives of the doctrine. "Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery*, 439 U.S. at 326. Denying preclusive effect to a finding that would support a court's judgment merely because the case was disposed of on other grounds as well would result in the inefficient use of private and public litigation resources. Courts routinely decide cases on multiple grounds, each of which has been fully litigated and given careful consideration due to their potentially dispositive role in the case. Because the interests that the necessity principle protects are not compromised under these circumstances, it would be curious to conclude that *none* of these findings were necessary to the judgment for purposes of collateral estoppel. *See* Restatement of Judgments § 68 cmt. n ("It seems obvious that it should not be held that neither [alternative finding] is material [to a judgment], and hence both should be held to be material.").

In opposition to this position are three arguments against applying collateral estoppel to independently sufficient alternative findings. "First, a determination in the alternative may not have been as carefully or rigorously considered as it would have if it had been necessary to the result, and in that sense it has some of the characteristics of dicta." Restatement (Second) of Judgments § 27 cmt. i. Second, "[s]ince one

20

alternative ground will support the judgment, the losing litigant has little incentive to appeal another ground, even if erroneous." *Hicks*, 662 F.2d at 1168; *see also* Restatement (Second) of Judgments § 27 cmt. i ("[T]he losing party, although entitled to appeal from both determinations, might be dissuaded from doing so because of the likelihood that at least one of them would be upheld and the other not even reached."). Without an "incentive to appeal, the losing litigant will be less likely to consider collateral consequences of the erroneous ground, and this may disadvantage him unfairly later, unless he is particularly prescient." *Hicks*, 662 F.2d at 1168.

Finally, to the extent that parties would file "cautionary appeals" to avoid the possible preclusive effects of an alternative holding in future litigation, this would "increas[e] the burdens of litigation on the parties and the courts rather than lightening those burdens." Restatement (Second) of Judgments § 27 cmt. i. Of course, this result is "contrary to the principles of judicial economy which motivated the doctrine of collateral estoppel in the first place." *Hicks*, 662 F.2d at 1169.

We are not persuaded by the rationale supporting the position of the Second Restatement. As a general matter, we are unconvinced that courts do, or should be assumed to, give less rigorous consideration to the alternative grounds they voice for their decisions. A determination that is independently sufficient to support a court's judgment is not "incidental, collateral, or immaterial to that judgment," *Hicks*, 662 F.2d at 1168, and it is reasonable to expect that such a finding is the product of careful judicial reasoning.

21

Moreover, because collateral estoppel applies only to issues that were "actually litigated" in prior proceedings, there is little risk that preclusive effect will be given to determinations that the parties did not deem important or that were not subject to evidentiary proof. *See* Wright et al., *supra*, at § 4419, p.495 (noting the relationship between the "actual litigation" and "necessary" prongs for collateral estoppel); *id.* at § 4421, p.545 ("The necessity principle may become mingled with the requirements of actual litigation and actual decision."). For example, in the instant case, the parties focused on the likelihood of confusion in their pleadings and extensively litigated the issue for more than four years. Thus, litigants are adequately protected from the unfairness of giving preclusive effect to a finding that was not "vigorously litigated" or was not a "focus of the court's decision." *Commercial Assocs.*, 998 F.2d at 1097; *see also Williams*, 556 F.2d at 1154 ("The concern that an issue not essential to the prior judgment may not have been afforded the careful deliberation and analysis normally applied to essential issues is a real one in some circumstances, but not . . . where [the prior court] had the substantive issue fully briefed, and discussed its factual basis at length.").

Nor do we believe that the position of the First Restatement increases the risk that preclusion will be applied unfairly against a litigant who failed to appeal a judgment because it was supportable on alternative grounds. This concern is utterly speculative and does not outweigh the systemic interest that courts and litigants have in ensuring that the identical parties receive only "one bite at the apple" on a given issue.

22

Adopting the Second Restatement's view that preclusive effect should be denied to findings because they are stated in the alternative would significantly weaken the principle that "later courts should honor the first actual decision of a matter that has been actually litigated." Wright et al., *supra*, at § 4416, p.386. The doctrine of collateral estoppel protects this vital interest of the judicial system. *See S. Pac. Ry. v. United States*, 168 U.S. 1, 49 (1897) (noting that the "general rule" of issue preclusion "is demanded by the very object for which civil courts have been established"). Litigants often raise multiple issues that are potentially dispositive of a case, and courts routinely address them in the interest of providing a complete and thoroughly reasoned decision. To permit or require relitigation of all alternative findings would eviscerate a great number of judicial determinations that were the products of costly litigation and careful deliberation. Indeed, under the approach of the Second Restatement, the judicial findings in nearly any complex case would be unlikely to preclude subsequent relitigation of the same issues.

Thus, we will follow the traditional view that independently sufficient alternative findings should be given preclusive effect. We recognize that such determinations do not fulfill the necessity requirement for collateral estoppel in a strict sense but, just as we did not "'quibbl[e] about the necessity principle'" in the context of declaratory judgments, *Henglein*, 260 F.3d at 212 (quoting Wright et al., *supra*, at § 4421, p.581), neither will we do so in the context of alternative holdings that have been actually litigated and decided. Applying collateral estoppel in such cases does not undermine the interests that the necessity principle protects. We have little difficulty promoting

23

the objectives of the necessity rule rather than requiring its formal fulfillment in situations where those objectives are served and it is equitable to do so. *See Raytech Corp.*, 54 F.3d at 195 n.8 (noting that issue preclusion is equitable in nature); *Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.*, 744 F.2d 118, 125 (D.C. Cir. 1984) (same); *see also Nat'l R.R. Passenger Corp.*, 288 F.3d at 525 (describing the "equitable exceptions" to collateral estoppel); Restatement (Second) of Judgments § 28 (same). Accordingly, we adopt the view of the First Restatement and the other courts of appeals that permit the application of issue preclusion to alternative findings.

We note that at least one commentator has offered a variation on the First Restatement's rule, whereby independently sufficient alternative findings would be given preclusive effect only "if a second court can determine without extended inquiry that a particular finding reflects a careful process of decision." Wright et al., *supra*, at § 4421, p. 580; *see also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 909 (6th Cir. 2001) ("[W]here . . . one ground for the decision is clearly primary and the other only secondary, the secondary ground is not 'necessary to the outcome' for the purposes of issue preclusion."). This approach might work well in circumstances such as those before us, where the same tribunal that made the potentially preclusive finding also concluded later that this finding was necessary to its earlier judgment. However, "it is in the interest of predictability and simplicity for the result of nonpreclusion to be uniform." Restatement (Second) of Judgments § 27 cmt. i. Given that "the question of preclusion will almost always be a close one if each case is to rest on its own particular facts," *id.*, a rule that required case-by-

24

case evaluation and second-guessing of how carefully the first tribunal considered a question would deny the parties the benefit of a "clear rule" and would likely result in a "wasteful expansion of the effort to reconstruct the initial process of decision," Wright et al., *supra*, at § 4421, p.580. We thus believe that the First Restatement of Judgments articulates a clearer and better rule to be applied in the circumstances before us.

Jean Alexander contends that, regardless of whether we adopt the First Restatement rule, it would be unfair to apply issue preclusion here because Jean Alexander was the prevailing party in the cancellation proceedings and was therefore unable to appeal the TTAB's favorable finding on likelihood of confusion. *See* Restatement (Second) of Judgments § 28(1) (rejecting issue preclusion where "the party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action"). We disagree. Any "party to a [TTAB] proceeding who is dissatisfied with the decision of the Board" may appeal. *Trademark Trial and Appeal Board Manual of Procedure* § 901.01 (2d ed. 2004); *see also* 15 U.S.C. § 1071; 37 C.F.R. § 2.145. *But see Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 626 (9th Cir. 1991) (citing *Weight Watchers Int'l, Inc. v. I. Rokeach & Sons, Inc.*, 546 F. Supp. 841, 842 (S.D.N.Y. 1981), for proposition that a prevailing party may only appeal the Board's action in needlessly reaching an issue, rather than its erroneous resolution of that issue). More generally, the Supreme Court has held that a prevailing party may appeal "for the purpose of obtaining a review of findings he deems erroneous which are not necessary to support the decree." *Elec.*

25

*Fitting Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 242 (1939); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 334 (1980) ("[A]ppeal may be permitted from an adverse ruling collateral to the judgment on the merits at the behest of the party who has prevailed on the merits, so long as that party retains a stake in the appeal satisfying the requirements of Art[icle] III."). Under this authority, Jean Alexander could have appealed the Board's finding on likelihood of confusion, even as the prevailing party.

Jean Alexander's corollary argument is that, even if it could have appealed the finding, it would have harmed its own interest to do so. "In the context of the [c]ancellation [p]roceeding before the TTAB, Jean Alexander had absolutely no interest in proving that there was likelihood of confusion," as this was a requirement for L'Oreal to prevail. (Jean Alexander Br. at 26.) We are unsympathetic to this argument. It was not necessary for Jean Alexander to resist the cancellation petition by denying the likelihood of confusion between its EQ System mark and the modernized Shades EQ mark and raising the issue as an affirmative defense. However, having raised and litigated this specific claim, Jean Alexander cannot now avoid the Board's determination of it because its own interests or the litigation context have changed. *See United States v. Webber*, 396 F.3d 381, 385-86 (3d Cir. 1968).

IV.

We follow the rule of the First Restatement of Judgments and give preclusive effect to the TTAB's alternative holding that there is no likelihood of confusion between L'Oreal's

26

modernized Shades EQ mark and Jean Alexander's EQ System mark.[5] Because Jean Alexander's claim is barred by the doctrine of collateral estoppel, we will affirm the District Court's order.

---

[5]We also reject Jean Alexander's alternative arguments. First, it has claimed that it lacked a full and fair opportunity to litigate likelihood of confusion because it did not bear the burden of proof on this issue in the cancellation proceedings. We reject this argument out of hand. There is no legal authority for the proposition that a party without the burden of proof does not have the opportunity to litigate an issue and, in any event, Jean Alexander asserted as an *affirmative defense* to the cancellation action that there was no likelihood of confusion and therefore did bear a burden of proof on the issue.

Jean Alexander also argues that the District Court should have converted L'Oreal's motion to dismiss into a motion for summary judgment after L'Oreal attached to its motion to dismiss copies of the TTAB's opinions and the parties' pleadings before the TTAB in the cancellation action. However, "[t]o resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). Thus, the District Court did not err in this respect.

**APPENDIX**

<u>L'Oreal's Original "Shades EQ" Mark</u>

(First Used in 1988)



Jean Alexander's "EQ System" Mark

(First Used in 1990; Registered in 1993)



L'Oreal's Modernized "Shades EQ" Mark

(First Used in 1992; Application for Registration Filed in
1996)

