T.C. Memo. 2016-137

UNITED STATES TAX COURT

BOHDAN SENYSZYN AND KELLY L. SENYSZYN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 9721-11.                          Filed July 21, 2016.

In <u>Senyszyn v. Commissioner</u> (<u>Senyszyn II</u>), 146 T.C. __ (Mar. 31, 2016), we declined to apply the doctrine of collateral estoppel to uphold whatever minimum deficiency would be consistent with PH's prior conviction for tax evasion. We found that the evidence presented at trial showed that Ps were not liable for any deficiency and concluded that the purposes of collateral estoppel did not support its application. R filed a motion for reconsideration of <u>Senyszyn II</u> on the grounds that, because the legal requirements for applying the doctrine were met, its application was mandatory.

    <u>Held</u>: The discretion we exercised in <u>Senyszyn II</u> not to apply collateral estoppel to uphold a minimum deficiency was squarely within applicable precedent; R's motion for reconsideration will be denied.

---

[*]This opinion supplements our prior Opinion <u>Senyszyn v. Commissioner</u> (<u>Senyszyn II</u>), 146 T.C. __ (Mar. 31, 2016).

**[*2]**   Bohdan Senyszyn and Kelly L. Senyszyn, pro sese.

Marco Franco and Lydia A. Branche, for respondent.


SUPPLEMENTAL MEMORANDUM OPINION


HALPERN, Judge:  This case is before us on respondent's motion under Rule 161[1] that we reconsider our Opinion Senyszyn v. Commissioner (Senyszyn II), 146 T.C. __ (Mar. 31, 2016).  For the reasons explained below, we will deny respondent's motion.

Background

Mr. Senyszyn's Tax Evasion Conviction

In May 2004, David Hook, a former business associate of Mr. Senyszyn, filed a civil fraud suit against petitioners alleging that they had embezzled funds from him between 2002 and 2004.  Mr. Hook's civil suit led to a Federal criminal investigation of Mr. Senyszyn.  As part of that investigation, Internal Revenue Agent Carmine DeGrazio was asked to determine the amount of income that Mr. Senyszyn had received in 2003 but had failed to report on petitioners' 2003 Form

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] 1040, U.S. Individual Income Tax Return. Agent DeGrazio examined records of accounts belonging to petitioners, to Mr. Hook, or to related entities to determine the flow of funds between Mr. Hook's accounts and Mr. Senyszyn's accounts. Agent DeGrazio compared the transfers made from Mr. Hook's accounts to Mr. Senyszyn's accounts with the transfers in the opposite direction and concluded that Mr. Senyszyn had received $252,726 of net "benefits" from Mr. Hook that petitioners did not report on their 2003 Form 1040.

In September 2007, the U.S. Attorney for the District of New Jersey filed a four-count information in a criminal case against Mr. Senyszyn that included a charge of tax evasion in violation of section 7201. In support of the tax evasion charge, the information alleged that Mr. Senyszyn embezzled approximately $252,726 from Mr. Hook during 2003 and failed to include that amount in the income reported on petitioners' 2003 Form 1040.

Contemporaneous with the U.S. attorney's filing of charges against him, Mr. Senyszyn signed an agreement to plead guilty to all four counts with which he was charged. Mr. Senyszyn agreed to stipulate at sentencing that he had knowingly and willfully failed to report $252,726 in taxable income for 2003. After Mr. Senyszyn entered a plea of guilty in accordance with his plea agreement, the U.S. District Court for the District of New Jersey entered judgment pursuant to Mr.

**[*4]** Senyszyn's plea. Upon the conclusion of further proceedings in the District Court and the U.S. Court of Appeals for the Third Circuit, the District Court's judgment became final.

The Determined Deficiency

Following Mr. Senyszyn's criminal conviction, respondent examined petitioners' 2003 Federal income tax return for the purpose of determining any deficiency in tax. After that examination, respondent determined a deficiency in petitioners' 2003 Federal income tax, together with fraud and accuracy-related penalties. The deficiency in tax resulted primarily from respondent's adjustment increasing petitioners' 2003 gross income on account of $252,726 of income that petitioners allegedly failed to report.

Senyszyn I

Before trial in this case, respondent moved for partial summary adjudication that (1) petitioners were collaterally estopped from denying that during 2003 Mr. Senyszyn received unreported income of $252,726 or that the fraud penalty applied for 2003 and (2) the period of limitations on assessment and collection of tax remained open.

Under the doctrine of collateral estoppel, or issue preclusion, once an issue of fact or law is "actually and necessarily determined by a court of competent

[*5] jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979). "Collateral estoppel * * * has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). It also "fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana, 440 U.S. at 154.

In our initial report in this case, Senyszyn v. Commissioner (Senyszyn I), T.C. Memo. 2013-274, we granted respondent's motion for summary judgment in regard to the fraud penalty and the statute of limitations but denied his motion for summary judgment that petitioners were estopped from disputing that Mr. Senyszyn received unreported income of $252,726 in 2003. As we explained in that report: "Although the existence of an underpayment in tax is a necessary element of tax evasion under section 7201, the determination of an exact liability evaded is not." Id. at *9. "Even where the taxpayer has stipulated a specific amount of underpayment in a guilty plea," we continued, "such stipulation--though strong evidence of the deficiency amount--does not collaterally estop the taxpayer from challenging that amount in a subsequent civil proceeding." Id. at *9-*10.

[*6] Therefore, we denied respondent's motion to the extent it sought determination of the amount of petitioners' unreported income for 2003. "The issues of the amounts of the deficiency in tax and the penalties for 2003", we concluded, "remain[ed] for trial." Id. at *15.

Nonetheless, the existence of some underpayment was a necessary element of the offense for which Mr. Senyszyn was convicted. See Sansone v. United States, 380 U.S. 343, 351 (1965) (listing "the existence of a tax deficiency" among "the elements of § 7201"). Therefore, we accepted that Mr. Senyszyn's criminal conviction established the existence of an underpayment by petitioners for 2003 but not its exact amount. Senyszyn I, at *12-*13.

Senyszyn II

On the basis of the evidence presented at trial, we found that Mr. Senyszyn repaid to Mr. Hook during 2003 more than he took. Senyszyn II, 146 T.C. at __ (slip op. at 21). Thus, correction of the error reflected in Agent DeGrazio's understatement of the amount that Mr. Senyszyn repaid to Mr. Hook during 2003 eliminated the deficiency respondent determined. See James v. United States, 366 U.S. 213, 220 (1961) (quoting with approval Government's observation on brief that victim's recovery of misappropriated funds reduces embezzler's income); Chumbrook v. Commissioner, T.C. Memo. 1977-108, 1977 Tax Ct. Memo LEXIS

**[\*7]** 330, at \*14 ("Where restitution of wrongfully converted property is made prior to the close of the year of the wrongful conversion, the restitution offsets what would otherwise be income, so that no income results from the wrongful conversion.").

Having determined in <u>Senyszyn II</u>, 146 T.C. at __ (slip op. 22), that "the evidence presented \* \* \* [did] not support the amount of the deficiency that respondent asserted--or, indeed, any deficiency at all", we then considered whether to apply the doctrine of collateral estoppel "to uphold a deficiency in whatever minimum amount would justify Mr. Senyszyn's conviction under section 7201." We recognized that prior cases had not established a minimum amount necessary to support a conviction for tax evasion. <u>Id.</u> at __ (slip op. at 24). We read <u>Parklane Hosiery Co.</u> as having granted trial courts discretion to decline to apply collateral estoppel when the purposes of the doctrine do not support its application. <u>Id.</u> at __ (slip op. at 25-26). Thus, we considered "whether the purposes of collateral estoppel support[ed] applying the doctrine to uphold a deficiency in petitioners' 2003 Federal income tax" and concluded that they would not. <u>Id.</u> at __ (slip op. at 26, 27). We explained that conclusion as follows:

> Upholding a minimum deficiency would not promote judicial economy: Even after Mr. Senyszyn's conviction under section 7201, we were required to hear this case to determine the amount of

**[*8]** petitioner's deficiency.  And any inconsistency between Mr. Senyszyn's prior criminal conviction and a decision that petitioners are not liable for any deficiency would not undermine "reliance on judicial action", cf. Montana, 440 U.S. at 154, because the inconsistency would result not from conflicting findings by different courts but instead from Mr. Senyszyn's entry of a guilty plea to a charge that the evidence--at least as presented to us--would not support. * * *

Id. at __ (slip op. at 27).  Therefore, we declined to apply the doctrine of collateral estoppel to uphold whatever minimum deficiency would be consistent with Mr. Senyszyn's conviction under section 7201.  Id. at __ (slip op. at 27-28).  Instead, we concluded that petitioners were not liable for any deficiency in their Federal income tax for 2003.  Id. at __ (slip op. at 29).

Respondent's Motion for Reconsideration

On May 2, 2016, respondent filed his motion asking us to reconsider Senyszyn II.[2]  In that motion, respondent alleges that, in Senyszyn II, we "did not properly apply the standard for collateral estoppel."  In particular, respondent argues that our claim of "broad discretion in the application of collateral estoppel" was a substantial error of law because it "contradicts previous holdings of the Court of Appeals for the Third Circuit, the court to which any appeal in this case

[2]Although a motion for reconsideration of an opinion must be filed within 30 days after service of the opinion, respondent's motion that we reconsider the Opinion we issued on March 31, 2016, was timely because April 30, 2016, fell on a Saturday.  See Rule 25(a)(2).

[*9] would lie." Finally, respondent alleges that proper application of the standard for collateral estoppel would result in "a substantial tax deficiency for petitioners."

According to respondent, that Court of Appeals allows trial courts discretion in the application of collateral estoppel only when the doctrine is asserted by a claimant who was not a party to the prior litigation (i.e., cases of "non-mutual" collateral estoppel). By contrast, in cases involving "mutual" collateral estoppel, in which the doctrine is asserted by a party to the prior litigation, courts must apply the doctrine whenever the legal conditions to its application are met.

Respondent rests his interpretation of Third Circuit law on a single case: that court's opinion in Jean Alexander Cosmetics, Inc. v. L'Oreal USA Inc., 458 F.3d 244 (3d Cir. 2006). Respondent focuses in particular on the court's discussion of the appropriate standard of appellate review of a trial court's decision whether to apply collateral estoppel. The Court of Appeals acknowledged in Jean Alexander that its prior decisions on that point had been inconsistent: "In some cases we have reviewed the application or nonapplication of issue preclusion for abuse of discretion, while in others we have applied plenary review." Id. at 247-248. The court sought to reconcile its prior cases on the basis of the circumstances in which the doctrine had been invoked. It had engaged in

**[*10]** more limited, abuse-of-discretion review only in cases "in which a nonparty to a previous proceeding ha[d] asserted issue preclusion against a defendant, that is, in cases involving 'non-mutual offensive collateral estoppel.'" Id. at 248. Those cases, the court suggested, established a limited exception to the "general rule" requiring "plenary review over the application of issue preclusion." Id.

The Court of Appeals justified the differing standards of appellate review according to the significance of equitable considerations in the determination of whether to apply collateral estoppel. The more the question turned on legal rather than equitable considerations, the court reasoned, the greater the justification for plenary review. Thus, plenary review of a lower court's decision in a case involving defensive or mutual collateral estoppel "makes sense", the court decided, because "[t]he predominant question" in those cases "is whether the basic requirements for issue preclusion are satisfied." Id. (citing Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n, 288 F.3d 519, 525 (3d Cir. 2002)).

Relying on Jean Alexander, respondent argues that our claim of "broad discretion" to apply collateral estoppel or not "contradicts the Third Circuit's standard of review." Respondent apparently reasons that, because that Court of Appeals reviews a lower court's application of collateral estoppel for abuse of discretion only in cases involving nonmutual collateral estoppel, those are the only

**[*11]** cases in which it allows a trial court <u>any</u> discretion in the application of the doctrine.

Respondent also suggests we "consider the breadth of * * * [our] opinion." He worries that the discretion we have claimed in the application of collateral estoppel might encourage "many more challenges to clear-cut cases" that will "waste judicial resources and the resources of the parties, thereby frustrating the entire purpose of collateral estoppel." He also professes concern that our Opinion "might be used to challenge prior criminal convictions." Finally, respondent suggests that applying collateral estoppel would "save[] the Court from having to confront the question of a requirement to arbitrarily determine some 'substantial tax deficiency' in order to afford the District Court the comity to which it is due, in a case where this Court's factual analysis shows there really is no deficiency at all." "The better course", respondent recommends, "is to accept via collateral estoppel the liability to which Mr. Senyszyn stipulated in his guilty plea as a minimum deficiency."

## Discussion

In asking us to reconsider <u>Senyszyn II</u>, respondent leaves largely unchallenged our determination that the purposes of collateral estoppel do not

[*12] support its application in the present case.[3] Instead, respondent relies on Jean Alexander for the proposition that collateral estoppel, when invoked by a party to the prior litigation, must be applied whenever the basic requirements for its application are met, regardless of whether doing so would further the doctrine's underlying purposes. Respondent offers no explanation for the surprising view that courts are hamstrung in the application of a doctrine they created largely for their own benefit.

Jean Alexander does not stand for the proposition for which respondent cites it. Respondent focuses on the Court of Appeals' observation that "[t]he predominant question in preclusion cases involving defensive or mutual collateral estoppel is whether the basic requirements for issue preclusion are satisfied." Jean Alexander, 458 F.3d at 248 (citing Nat'l R.R. Passenger Corp., 288 F.3d at 525). The Court of Appeals offered that observation not in a discussion of the standards

---

[3]We see no merit in respondent's argument that the need to consider challenges to collateral estoppel by "future petitioners" in cases "similar to the present case" "will waste judicial resources and the resources of the parties, thereby frustrating the entire purpose of collateral estoppel." As we explained in both of our prior opinions in this case, because a defendant's conviction under sec. 7201 establishes only the existence of a deficiency, but not its amount, the Commissioner's efforts to collect any tax owed will necessarily require subsequent civil litigation. We are also not persuaded by respondent's professed concern that our decision might somehow give Mr. Senyszyn, or others similarly situated, grounds to have a final criminal conviction overturned.

**[\*13]** governing the application of the doctrine on the merits but instead in addressing the appropriate standard of appellate review. The statement respondent seized on cannot be read to mean that courts are bound to apply collateral estoppel when invoked by a prior party whenever "the basic requirements for issue preclusion are satisfied." Cf. id. The question of whether those requirements are satisfied may be "[t]he predominant question in preclusion cases involving defensive or mutual collateral estoppel", see id., but "predominant" does not mean "sole".

The Court of Appeals' opinion in Nat'l R.R. Passenger Corp. demonstrates that, even if equitable considerations are less prevalent in cases involving nonmutual or defensive collateral estoppel, the application of the doctrine in those circumstances does not turn entirely on satisfaction of the legal requirements.[4] In any case that raises an issue of collateral estoppel, a court must consider equitable factors "to assure that the doctrine is applied in a manner that will serve the twin goals of fairness and efficient use of private and public litigation resources." Nat'l

---

[4]Thus, respondent not only misinterpreted the Court of Appeals' observation in Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 248 (3d Cir. 2006), regarding the relative importance of legal and equitable considerations in preclusion cases involving defensive or mutual collateral estoppel; he also failed to read (or appreciate the import of) the case the court cited in Jean Alexander in support of that observation. See id. (citing Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n, 288 F.3d 519, 525 (3d Cir. 2002)).

[*14] R.R. Passenger Corp., 288 F.3d at 525. The equitable factors relevant in a particular case depend on whether estoppel is being asserted by a prior party (i.e., whether "mutuality" exists) and whether its use is offensive or defensive. Id. But even in a case of mutual offensive collateral estoppel, like Nat'l R.R. Passenger Corp., application of the doctrine does not depend solely on the satisfaction of the applicable legal requirements. "Even when the requirements of the general rule of collateral estoppel are satisfied, the Court must consider whether there are special circumstances present which make it inequitable or inappropriate to foreclose relitigation of a previously determined issue." Id. at 528. On the facts before it, the Nat'l R.R. Passenger Corp. court found no special circumstances that would justify relitigation. It did not, however, resolve to apply collateral estoppel merely because the legal requirements had been satisfied.

Thus, Jean Alexander establishes only that, were respondent to appeal our decision in the Third Circuit, the Court of Appeals would conduct plenary, or de novo, review of our determination not to apply collateral estoppel. See Salve Regina Coll. v. Russell, 499 U.S. 225, 231 (1991) (using interchangeably the terms "plenary", "de novo", and "independent" review). Jean Alexander does not establish that, because the basic requirements for issue preclusion are satisfied in the present case, it necessarily follows that the doctrine must be applied, even

**[\*15]** though doing so would not further the doctrine's underlying purposes. Respondent's argument thus conflates the substantive issue of when collateral estoppel properly applies and the procedural issue of the scope of an appellate court's review of a lower court's decision to apply the doctrine or not. An appellate court's choice to exercise plenary review of a lower court's decision, rather than more limited abuse-of-discretion review, does not mean that the lower court necessarily lacked any discretion to take into account relevant equitable considerations, as well as applicable legal requirements, in reaching its decision. The appellate court's exercise of plenary review simply means that that court will make its own weighing of any relevant equitable considerations instead of deferring to the lower court's judgment. E.g., Salve Regina Coll., 499 U.S. at 238 ("When de novo review is compelled, no form of appellate deference is acceptable."). See generally 19 James Wm. Moore, Moore's Federal Practice, sec. 206.04[1], at 206-23 (3d ed. 2016) ("[A] circuit court [employing de novo review] may substitute its own judgment regarding a conclusion of law made by the trial court.").

Even if we were to apply collateral estoppel in this case, the doctrine would not support upholding the deficiency respondent asserts. For the reasons explained in Senyszyn I, collateral estoppel, even if applicable, would not

**[\*16]** establish the amount of any income petitioners failed to report for 2003. Were we to apply collateral estoppel, we would have to determine a deficiency in whatever minimum amount would justify Mr. Senyszyn's conviction under section 7201. Because prior cases do not establish a minimum amount necessary to support a conviction, the determination respondent requests of us would necessarily be not only arbitrary but also nominal.

We remain convinced that no purpose would be served by upholding a nominal deficiency--one that respondent apparently concedes would be contrary to the evidence[5]--merely because the legal preconditions for the application of collateral estoppel are satisfied. We see nothing in the Court of Appeals' opinion in Jean Alexander, or in its jurisprudence generally, that requires us to make such a seemingly pointless determination. Instead, that court's opinions confirm that, in any case raising the possible application of collateral estoppel--whether offensive

---

[5]Rule 161 allows a party to request our reconsideration of either an opinion or findings of fact. Although respondent's motion asks only that we reconsider Senyszyn II on the grounds that it reflected a substantial error of law, the memorandum he submitted in support of his motion refers to "substantial errors of fact" as well. But the errors of fact to which respondent refers appear to derive from our alleged errors of law. Respondent argues that Senyszyn II "contains clear errors of law that led the Court to find facts inconsistent with a prior final decision made by a court of competent jurisdiction in a case concerning the same parties." Nowhere in his memorandum does respondent challenge our evaluation of the evidence presented in Senyszyn II.

**[*17]** or defensive, mutual or nonmutual--a court must consider relevant equitable factors to assure that the doctrine is applied in a manner consistent with its underlying objectives.  Because the discretion we exercised in <u>Senyszyn II</u> is squarely within the scope of Third Circuit precedent, we will deny respondent's motion.

<u>An appropriate order will be issued</u>.